IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ENTROPIC COMMUNICATIONS, LLC, | § § § | |
| *Plaintiff*, | § § | CIVIL ACTION NO. 2:22-CV-00075-JRG |
| v. | § § | (LEAD CASE) |
| DIRECTV, LLC, AT&T SERVICES, INC., | § § | |
| | § | |
| DISH NETWORK CORPORATION, DISH NETWORK L.L.C., DISH NETWORK SERVICE L.L.C., | § § § § § | CIVIL ACTION NO. 2:22-CV-00076-JRG (MEMBER CASE) |
| *Defendants*. | § § | |

## ORDER

Before the Court is (1) the Motion Pursuant to 28 U.S.C. § 1404(a) to Transfer to the District of Colorado (Dkt. No. 25) filed by DISH Network Corporation, DISH Network LLC, and Dish Network Service LLC ("collectively, DISH") ("DISH's Transfer Motion"); (2) the Motion Pursuant to 28 U.S.C. § 1404(a) to Transfer Venue to the Central District of California (Dkt. No. 52) filed by DIRECTV LLC ("DIRECTV") ("DIRECTV's Transfer Motion"); (3) the Motion to Sever and Stay or, Alternatively, for Transfer (Dkt. No. 53) filed by DIRECTV and AT&T Services, Inc. ("AT&T") ("Motion to Sever or Transfer"); and (4) the Opposition to DISH's Motion for Transfer Pursuant to 28 U.S.C. § 1404(a) and Cross-Motion for Transfer Pursuant to 28 U.S.C. § 1404(a) (Dkt. No. 75) filed by Entropic Communications, LLC ("Plaintiff") ("Plaintiff's Transfer Motion") (collectively, the "Motions"). The Court held a hearing on the Motions on October 12, 2022. (Dkt. No. 105.) Having considered the Motions, the relevant briefing, the applicable law, and arguments presented at the October 12, 2022 hearing, the Court hereby **transfers** each of the above-captioned cases to the Central District of California.

I.   **BACKGROUND**

   a.   **The Parties**

   i.   *Entropic*

Plaintiff is an entity formed in Delaware in March of 2021 with a principal place of business in Plano, Texas. (Dkt. No. 25 at 6; *see also* Dkt. No. 20, ¶ 2.) Plaintiff's Chief Executive Officer and other board members are located in California. (Dkt. No. 52 at 1.) In 2015, a California company called Entropic Communications Inc. ("Original Entropic")—the company that developed the patents asserted in this case—was acquired by a company called MaxLinear. (Dkt. No. 25 at 6, n.5.)[1] MaxLinear assigned the patents asserted in this case to Plaintiff in 2021. (*Id.*)

   ii.   *DISH*

Three distinct DISH defendants have been sued, all headquartered in Colorado. (Dkt. No. 25 at 1.) Two of the DISH entities are Colorado companies and one is a Nevada company. (*Id.*) DISH represents that current and former employees who will testify about engineering, prior art, sales, finance, source code, and the relationship between DISH and Original Entropic are in Colorado. (*Id.*) DISH admits that its accused products are used throughout the United States. (*Id.*)

   iii.   *DIRECTV*

DIRECTV is a California company headquartered in the Central District of California ("CDCA"). (Dkt. No. 52 at 1.) Current and former DIRECTV engineers who worked on the accused technology and relevant prior art systems are based in CDCA. (*Id.*) DIRECTV obtains components from third-party suppliers in California. (*Id.*)

   iv.   *AT&T*

DIRECTV contends that AT&T is a third-party downstream seller of DIRECTV's products

---

[1] DISH had a prior business relationship with Original Entropic. (*Id.*)

and services. (Dkt. No. 52 at 2.) AT&T and DIRECTV are separate corporate entities, but last year, AT&T's parent company (AT&T Inc.) formed a new company, DTV, of which DIRECTV is a subsidiary. (*Id*. at 9.) DIRECTV argues that AT&T has no managerial or day-to-day role at DIRECTV. (*Id*. at 9–10.) DIRECTV outsources some applications (*e.g.*, human resources, real estate, and payroll) to AT&T "for a limited time," but pays AT&T to perform those services as if AT&T were an independent contractor. (*Id*.)

### b. Accused Products

Plaintiff alleges infringement by DISH as to low-noise block converters ("LNBs"), outdoor units ("ODUs"), signal selector and combiners ("SSCs"), gateway devices, and monitoring equipment used in its satellite products. (Dkt. No. 25 at 4.) Plaintiff alleges infringement by DIRECTV (and AT&T) as to satellite TV equipment such as LNBs and ODUs kept on customer premises. (Dkt. No. 20, ¶ 54.) DIRECTV contends that AT&T is a downstream seller of DIRECTV products. (Dkt. No. 52 at 2.)

## II.   PENDING MOTIONS

### a. DISH's Transfer Motion:

DISH moved to transfer member case 2:22-cv-0076 to the District of Colorado on April 27, 2022. (Dkt. No. 25 at 1.) DISH's Transfer Motion is opposed. (*See generally* Dkt. No. 75.)

### b. DIRECTV's Transfer Motion and Motion to Sever or Transfer:

On June 3, 2022, DIRECTV moved to transfer venue to the Central District of California. (Dkt. No. 52.) DIRECTV is a defendant in the lead case (2:22-cv-0075). Simultaneously, DIRECTV moved, along with co-defendant AT&T, to sever and stay all claims against AT&T pending disposition of the claims against DIRECTV. (Dkt. No. 53.) In that motion, DIRECTV represents that AT&T does not make, design, modify, or provide any product or service accused of infringement apart from reselling accused DIRECTV products and services. (*Id*. at 1.)

DIRECTV indemnifies AT&T in this case and AT&T has agreed to be bound by any decision on the merits in this action against AT&T. (*Id.*) Should the Court not grant the motion to sever and stay AT&T, the DIRECTV and AT&T defendants alternatively request that the Court transfer the case, including AT&T, to the Central District of California as detailed in its co-pending transfer motion. (*Id.*)

### c. Plaintiff's Transfer Motion:

On August 3, 2022, Plaintiff indicated that it does not oppose the request to transfer the case to CDCA, *except* on the grounds that Plaintiff believes the entire consolidated case, including the case against DISH, should be transferred to CDCA. (Dkt. No. 75.) Plaintiff contends that venue is proper in this District, but "given several recent Federal Circuit decisions addressing transfers under § 1404 in cases filed in the Eastern and Western Districts of Texas, the Court should find that the CDCA is a more convenient location." (*Id.* at 1.)

## III. LEGAL STANDARD

### a. Transfer Under 28 U.S.C. § 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). In evaluating a motion to transfer pursuant to § 1404(a), the Court considers the Fifth Circuit's non-exhaustive list of private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). The private interest factors include: (1) "the relative ease of access to sources of proof;" (2) "the availability of compulsory process to secure the attendance of witnesses;" (3) "the cost of attendance for willing witnesses;" and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." (*Id.*) The public interest factors include: (1) "the administrative difficulties flowing from court congestion;" (2) "the local interest in having localized interests decided at home;" (3) "the familiarity of the forum with the law that

will govern the case;" and (4) "the avoidance of unnecessary problems of conflict of laws of the application of foreign law." (*Id.*) To support its claim for a transfer under § 1404(a), the defendant must demonstrate that the transferee venue is "*clearly* more convenient" than the venue chosen by the plaintiff. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*).

## IV. ANALYSIS

Defendants agree that the above-captioned cases do not belong in the Eastern District of Texas. However, they dispute the proper transferee forum. The Plaintiff filed the cases here but now moves to transfer all cases to CDCA. The Court will analyze each parties' argument in turn.

### a. DIRECTV AND AT&T

Plaintiff does not oppose transfer of DIRECTV and AT&T to CDCA. (*See generally* Dkt. No. 75 at 1, n.1.) The Court will treat DIRECTV's Transfer Motion (Dkt. No. 52) and the alternative relief sought in the Motion to Sever or Transfer (Dkt. No. 53) as unopposed. Accordingly, the Court need not analyze the convenience factors as to DIRECTV or AT&T.

### b. DISH

DISH argues that "[t]his case belongs in Colorado" because "all three DISH defendants have their headquarters in Colorado, and two of the three are Colorado companies." (Dkt. No. 25 at 1.) Plaintiff argues that CDCA is a "clearly more convenient" forum to decide the consolidated cases than either the Eastern District of Texas or the District of Colorado. (Dkt. No. 75 at 3.) Indeed, Plaintiff conditioned its non-opposition of DIRECTV's Transfer Motion on the request that the case against DISH *also* be transferred to the CDCA. (*See generally id*. at 1, n.1.)

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). The question of whether a suit "might have been brought" in the transferee forum

5

encompasses subject matter jurisdiction, personal jurisdiction, and propriety of venue. *Viking Technologies, LLC v. Assurant, Inc.,* 2021 WL 3520756, at *1 (E.D. Tex. June 21, 2021). DISH does not dispute that CDCA has subject matter jurisdiction over the instant claims, nor does it dispute that it is subject to personal jurisdiction in CDCA. (*See generally* Dkt. No. 88 at 4–5.) Yet somehow in its argument to the Court, DISH opposes the notion that suit against it by Plaintiff could have properly been brought in CDCA such that the "threshold" question under § 1404(a) is satisfied. (*Id.*)

### i. Threshold: Where Case Could Have Been Brought

In an action for patent infringement, venue is controlled by 28 U.S.C. § 1400(b). Pursuant thereto, "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Under the residency requirement, the Supreme Court held that "a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1517 (2017).

Plaintiff does not dispute that DISH is "at home" in Colorado for venue purposes. Rather, Plaintiff argues that venue is proper as to DISH in CDCA because DISH "has committed acts of infringement and has a regular and established place of business" in CDCA. (*See, e.g.*, Dkt. No. 75.) Under the patent venue statute, a "regular and established place of business" must be (1) "a physical place in the district"; (2) "regular and established"; and (3) "the place of the defendant." *In re Cray*, 871 F.3d at 1360.

The Federal Circuit set forth a number of considerations relevant to determining if a regular and established place of business is "of the defendant." *In re Cray*, 871 F.3d at 1360. Those considerations include whether the defendant owns or leases the place, exercises other attributes

of possession or control over the place, conditions employment on an employee's continued residence in the district, stores materials at a place in the district so that they can be distributed or sold from that place, advertises a place for its business or represents that it has a place of business in the district. *Id*. at 1363–67. A court may also consider the nature and activity of the alleged place of business of the defendant in the district in comparison with that of other places of business of the defendant in other venues. *Id*. These enumerated considerations are not exhaustive but rather illustrative of the types of information relevant for determining whether a physical place is "of the defendant." *Id*. at 1363.

### 1. Physical Place in the District

Under the first *Cray* factor, "there must be a physical place in the district." *In re Cray*, 871 F.3d at 1360. The place need only be a "physical, geographical location in the district from which the business of the defendant is carried out." *Id.* DISH argues that the DISH entities named as defendants in the instant case "do not maintain any regular and established places of business in the Central District of California." (Dkt. No. 88 at 4.) DISH does not dispute that there are "warehouses, retail stores, and installation technicians" in the CDCA that bear the name "DISH", nor does DISH dispute that that DISH-branded products and services are sold and delivered through DISH-branded retail outlets. (*Id*. at 5.) However, DISH contends that it is actually "Dish Network California Service Corporation" ("DISH California") that "generally manages warehouses and employs installation technicians in California." (*Id*.) DISH says that none of the properties Plaintiff identifies in CDCA are owned or leased by the specifically named DISH defendants. (*Id*.)

Even if DISH does not rent or own the space, *Cray* considers whether the defendant exercises any attributes of control over the location. Here, this consideration also relates to the

factor that considers the nature of the defendant's relationship with employees at the place and whether the defendant has any control over the employees at the place. *In re ZTE (USA) Inc*., 890 F.3d 1008, 1015 (Fed. Cir. 2018). It is undisputed that there are physical places in CDCA that bear the DISH name. The only question is whether such places are locations "from which the business of the defendant is carried out." *In re Cray*, 871 F.3d at 1360. The Court finds that the named DISH defendants have a physical place in CDCA from which their business is carried out. "Potentially relevant inquiries include whether the defendant lists the alleged place of business on a website, or in a telephone or other directory; or places its name on a sign associated with or on the building itself." *In re* Cray, 871 F.3d at 1363–64. Such is certainly the case here.

Plaintiff acknowledges that "DISH Network Service LLC does business in California under the name DISH Network California Service Corp." (Dkt. No. 75 at 4, n.2.) Plaintiff contends that even where venue may not be imputed from a subsidiary to a parent, a defendant's "ratif[ication]" of a location as its own may still be sufficient to establish venue. (Dkt. No. 94 at 1.) Plaintiff argues that there is "minimal separation, if any, between [DISH] California" and the DISH defendants. (*Id*.) Indeed, the Court has confirmed that DISH California lists as its principal office and registered agent the same location and agent as the DISH defendants. From the DISH website, a customer can find DISH service packages available in CDCA and authorized retailers of DISH-branded products, and a prospective employee can find job listings for positions in CDCA.

In fact, it appears that the name "DISH" is loosely defined. As an example, these DISH defendants use a standard service agreement nationwide. (*See, e.g*., Dkt. No. 76-2.) In that service agreement, Dish Network Service LLC is alternately defined as Dish Network California Service Corporation for customers in California and DISH Network Puerto Rico LLC for customers in Puerto Rico. (*Id*. at 2.)

### 2. Regular and Established Place of Business

Under the second *Cray* factor, a "regular and established place of business" requires "the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'" *In re Google*, 949 F.3d at 1345. The Federal Circuit reiterated that "the essential elements of agency are (1) the principal's right to direct or control the agent's actions; (2) the manifestation of consent by the principal to the agent that the agent shall act on his behalf; and (3) the consent by the agent to act." *In re Volkswagen*, 28 F.4th at 1208–09 (quotations omitted). "The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents." *In re Google*, 949 F.3d at 1345–46 (quoting Restatement (Third) of Agency § 1.01 cmt. f(1)).

Plaintiff argues that there is "minimal" separation at an organizational level between the named DISH defendants and DISH California. (Dkt. No. 94 at 1–2.) In support of its argument, Plaintiff notes that DISH California shares the same Colorado headquarters as the named DISH defendants and "also share[s] overlapping leadership." (*Id.*) Plaintiff also cites to various public filings, including consent judgments and California state case law, noting that a logo owned by Dish Network LLC is placed on warehouses occupied by DISH California and that installation technicians employed by DISH California carry business cards that identify their employer as the named DISH defendants. (*Id.* at 2.)

DISH responds that Plaintiff seeks to "pierce the corporate veil and hold DISH Network LLC and/or DISH Network Corporation responsible for acts of affiliates that are not defendants here." (Dkt. No. 88 at 6.) However, the Court finds that it need not pierce the corporate veil of DISH's organizational structure to find that DISH holds the locations in CDCA out as its own.

Plaintiff presented evidence of the DISH logo on vans and other property stored at buildings admittedly managed by DISH California. There is little real dispute that the locations at issue are "physical places" within CDCA and that they are "regular and established."

### 3. Place "of" the Defendant

Under the third *Cray* factor, "'the regular and established place of business' must be 'the place of the defendant.'" *In re Cray*, 871 F.3d at 1363. To be the place of the defendant, "the defendant must establish or ratify the place of business." *Id.* A court may consider "whether the defendant owns or leases the place"; "exercises other attributes of possession or control over the place"; "[m]arketing or advertisements . . . but only to the extent they indicate that the defendant itself holds out a place for its business"; "whether the defendant lists the alleged place of business on a website, or in a telephone or other directory"; or whether the defendant "places its name on a sign associated with or on the building itself." *Id.* at 1363–64. However, the Federal Circuit stated that "the mere fact that a defendant has advertised that it has a place of business or has even set up an office is not sufficient." *Id.* at 1364.

Here, DISH has adopted and ratified the locations in CDCA as its places of business, even if it declines to expressly do so for purposes of its Motion. From the main DISH website, a customer can find DISH service packages available in CDCA and authorized retailers of DISH-branded products. Also, a prospective employee can find job listings for positions in CDCA. Indeed, DISH advertises its "nationwide availability" prominently on its website. Further, as is required when interacting with customers in California, DISH's main website has a section in its privacy statement "in accordance with the California Consumer Privacy Act," demonstrating that DISH is purposefully holding itself out as providing products and services in California.

Accordingly, for many the same reasons as the *Cray* factors above, the Court finds that the

regular and established places of business in California are "of" DISH. Having found that the case against DISH could have been brought in CDCA, the threshold inquiry is satisfied, and the Court now turns to the analysis of the convenience factors.

### ii. Private Interest Factors

#### 1. Relative Ease of Access to Sources of Proof

In considering the relative ease of access to sources of proof, a court looks to determine where evidence, such as documents and physical evidence, is stored. *Volkswagen II*, 545 F.3d at 316. For this factor to weigh in favor of transfer, the movant must show that transfer will result in more convenient access to such sources of proof. *See Diem LLC v. BigCommerce, Inc.*, 2017 WL 6729907, at *2 (E.D. Tex. Dec. 28, 2017). As the Federal Circuit has noted, "the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

DISH contends that documents related to this action are kept in DISH's headquarters and engineering offices in Englewood, Colorado. (Dkt. No. 25 at 4.) The hardware and software engineers who developed the accused systems and associated software—as well as those tasked with maintenance of the same— are also based in Colorado. (*Id.*) DISH admits that many of the components of the accused systems are obtained from third-party suppliers, such as MaxLinear, Global Invacom, MTI, and Broadcom. (*Id.* at n.3.) Notably, some of these suppliers are based in California, although others are based in the UK, North Carolina, and Taiwan. (*Id.*) None are based in Colorado. (*Id.*) DISH also admits that most of the surviving inventors still reside in Southern California. (*Id.* at 6–7.)

Entropic contends that, "by admission of all Defendants," the relevant sources of proof are in CDCA, where third-party suppliers are located. (Dkt. No. 73 at 1.) Entropic argues that

11

witnesses from the third parties will have the most relevant testimony and reside in CDCA. (Dkt. No. 91 at 2.) As to DISH's documents, Entropic contends that discovery revealed that DISH's documents are not in Colorado but are actually in document repositories in Wyoming. (Dkt. No. 73 at 2, 7.) In response, DISH argues that, although certain documents are stored at this data center, many of those documents can only be accessed by certain employees with access to those documents, and such employees are in Colorado. (Dkt. No. 88 at 8.)

The bulk of evidence related to the components of the accused products is with third party suppliers, which are admittedly outside of Colorado. However, DISH's headquarters in Colorado means that the majority of their engineering and financial witnesses will come from Colorado. The Court therefore finds that this factor is mixed and essentially neutral.

## 2.  Availability of Compulsory Process

This factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *Volkswagen II*, 545 F.3d at 316. A district court's subpoena power is governed by Federal Rule of Civil Procedure 45. For purposes of § 1404(a), there are three important parts to Rule 45. *See VirtualAgility, Inc. v. Salesforce.com, Inc.*, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014) (explaining 2013 amendments to Rule 45). First, a district court has subpoena power over witnesses that live or work within 100 miles of the courthouse. Fed. R. Civ. P. 45(c)(1)(A). Second, a district court has subpoena power over residents of the state in which the district court sits—a party or a party's officer that lives or works in the state can be compelled to attend trial, and non-party residents can be similarly compelled as long as their attendance would not result in "substantial expense." Fed. R. Civ. P. 45(c)(1)(B)(i)–(ii). Third, a district court has nationwide subpoena power to compel attendance of a nonparty witness at a deposition within 100

12

miles of where the witness lives or works. Fed. R. Civ. P. 45(a)(2), 45(c)(1).

Many former DISH employees are located in Colorado and subject to that Court's subpoena power. (Dkt. No. 25 at 7–8.) Moreover, DISH named three former DISH employees who live in Colorado and one that lives in Pennsylvania, but that is willing to travel to Colorado. (*Id*. at 8.) Plaintiff contends that, "by admission of the Defendants," the relevant witnesses are in California. (Dkt. No. 73 at 1.) This includes employees of third-party suppliers, all but one of the surviving inventors, the prosecuting attorney, and the companies that originally developed the patented technology (*i.e.*, Original Entropic and MaxLinear). (*Id*.)

Although there are former DISH employees that live in Colorado who might have relevant information related to the claims and defenses in this case, the parties have made clear that the most relevant non-party witnesses are located in California. Compulsory process will therefore be required to compel attendance of witnesses in California—not Colorado. Accordingly, the Court finds that this factor weighs in favor of transfer to CDCA.

### 3. Cost of Attendance for Willing Witnesses

The third private interest factor focuses on the cost of attendance for willing witnesses. When considering this factor, the court should consider all potential material and relevant witnesses. *See Alacritech Inc. v. CenturyLink, Inc*., 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Id*. at 1343 (citing *Volkswagen II*, 545 F.3d at 317). However, as courts applying Fifth Circuit precedent have noted, the convenience of party witnesses is given little weight. *See ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc*., 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010), *report and recommendation adopted in*

A-09-CA-773-LY (Dkt. No. 20) (Apr. 14, 2010) ("[I]t is unclear whether Defendant is contending that the transfer would be more convenient for non-party witnesses or merely for their own employee witnesses. If the Defendant is referring to employee witnesses, then their convenience would be entitled to little weight."); *see also Frederick v. Advanced Fin. Sols., Inc.*, 558 F. Supp. 699, 704 (E.D. Tex. 2007) ("The availability and convenience of party-witnesses is generally insignificant because a transfer based on this factor would only shift the inconvenience from movant to nonmovant.").

The majority of the willing witnesses in this case will come from DISH's headquarters in Colorado. (Dkt. No. 25 at 9.) In addition, DISH has identified one former employee located in Pennsylvania who is willing to travel to Colorado. (*Id*. at 8.) Plaintiff's Chief Executive Officer and other board members are located in California. (Dkt. No. 52 at 1.) The Court notes that, in the Fifth Circuit, the convenience of party witnesses is given little weight. *ADS Sec. L.P.,* 2010 WL 1170976, at *4. Accordingly, the Court finds that this factor weighs in favor of transfer to the District of Colorado.

### 4.  All Other Practical Problems

The fourth private interest factor addresses concerns rationally based on judicial economy. *Quest NetTech Corp. v. Apple, Inc.*, 2019 WL 6344267, at *6 (E.D. Tex. Nov. 27, 2019); *see also In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). In this case, Plaintiff agrees with DIRECTV that the lead case should be transferred to CDCA. (*See, e.g.*, Dkt. Nos. 25, 73.) Moreover, all Defendants agree that at least certain aspects of judicial economy would be made more efficient by transferring both cases to CDCA, including having a joint claim construction hearing. (*See, e.g.*, Dkt. No. 25 at 13; Dkt. No. 52 at 15.) However, DISH contends that transfer of the co-pending case against DIRECTV should not change the analysis in this case because DISH

and DIRECTV are direct competitors, this is not a standards-based case, and the accused products are different between each of the Defendants. (Dkt. No. 25 at 13.)

Plaintiff argues that the cases should remain consolidated in California because there are numerous overlapping factual and legal issues between the cases that reveal material benefits to the parties and the Courts. (Dkt. No. 73 at 1.) The patents asserted against all Defendants are the same, and in both cases, Plaintiff accuses components with identical Broadcom chipsets. (*Id.*) Plaintiff also argues that the invalidity contentions in both cases assert the same prior art. (Dkt. No. 91 at 3.) Plaintiff further cites *In re Google* for the premise that a district court does not abuse its discretion by keeping cases with overlapping issues together despite transfer being more convenient for certain defendants because "judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice and having one trial court decide all of these claims clearly furthers that objective." (Dkt. No. 91 at 4 (citing *In re Google Inc.*, 412 Fed. App'x 295, 296 (Fed. Cir. 2011)).)

Plaintiff represents that the Defendants have served nearly identical invalidity contentions against Plaintiff's patents. Plaintiff also contends that the differences between the accused products among the Defendants are closer to a Ford and Chevy analogy, rather than an apples and oranges analogy. Accepting Plaintiff's representations, the Court finds that there exists substantial efficiencies in keeping the consolidated cases together in CDCA. The parties agree that a joint *Markman* proceeding would be efficient and the Court notes that the same would avoid potentially inconsistent constructions on identical claim terms. The Court finds that such efficiencies would extend beyond the claim construction phase of the case and into both the affirmative infringement claims as well as the invalidity defenses. Accordingly, the Court finds that this factor strongly weighs in favor of transferring the entire consolidated case to CDCA.

### *iii. Public Interest Factors*

#### 1. Administrative Difficulties Flowing from Court Congestion

DISH argues this factor is neutral. (Dkt. No. 25 at 13–14.) Plaintiff contends that this factor slightly favors California. (Dkt. No. 73 at 13–14.)

#### 2. Local Interest

"Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206. DISH argues that Colorado has a strong local interest in this case because it is home to all of the DISH entities. (Dkt. No. 25 at 11.) Although DISH acknowledges that its products are sold nationwide, it contends that because DISH is "one of Colorado's largest private employers, with more than 7,000 employees in the Denver metro area alone," it is Colorado engineers and DISH's reputation in Colorado that led to the asserted claims. (*Id*.)

Plaintiff first argues that DISH's "Colorado reputation" argument is belied by the fact that DISH admits that its components are developed and designed by third-party suppliers in California. (Dkt. No. 73 at 11.) Plaintiff's executive officers, as well as the inventors of the asserted patents, live in California. (Dkt. No. 52 at 14.) Indeed, DISH's work with the Original Entropic and its successor, MaxLinear, occurred in California. (*Id*.) The parties also agree that certain relevant third-party component suppliers are based in California and will have relevant evidence. (Dkt. No. 73 at 11; *see also* Dkt. No. 25 at 4, n.3.)

The Court finds that this factor weighs slightly in favor of transfer to CDCA or is, at minimum, neutral.

#### 3. Remaining Factors

The parties agree these factors are neutral. (Dkt. No. 25 at 14–15; Dkt. No. 73 at 14.)

## V. CONCLUSION

In light of the foregoing, the Court is persuaded that the Plaintiff has established that the Central District of California is a clearly more convenient forum than the District of Colorado as to the DISH Defendants. Plaintiff, DIRECTV, and AT&T agree that the lead case should be transferred to the Central District of California.

Accordingly, DISH's Motion Pursuant to 28 U.S.C. § 1404(a) to Transfer to the District of Colorado (Dkt. No. 25) is **DENIED**; DIRECTV's Motion Pursuant to 28 U.S.C. § 1404(a) to Transfer Venue to the Central District of California (Dkt. No. 52) is **GRANTED**; and the Opposition to DISH's Motion for Transfer Pursuant to 28 U.S.C. § 1404(a) and Cross-Motion for Transfer Pursuant to 28 U.S.C. § 1404(a) (Dkt. No. 75) is **GRANTED**.

Additionally, the alternative relief (*i.e.*, transfer to the Central District of California) sought in the Motion to Sever and Stay or, Alternatively, for Transfer (Dkt. No. 53) is **GRANTED**, and the balance of the same is **DENIED**. Accordingly, the Clerk of Court is hereby **ORDERED** to transfer each of the above-captioned cases to the Central District of California, *instanter*.

**So ORDERED and SIGNED this 24th day of October, 2022.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE